UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE and TIG INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC UTILITY DISTRICT NO. 1 OF COWLITZ COUNTY, WASHINGTON, a Washington municipal corporation,<br><br>Defendant. | No. C04-5052 RBL<br><br>ORDER |

THIS MATTER comes on before the above-entitled Court upon three motions: (1) Non-Parties' Motion to Quash Subpoenas and Motion for Protective Order [Dkt. 64]; (2) Defendants Motion to Quash Subpoenas and Motion for Protective Order for EES Consulting and JRP Engineering [Dkt. 67] and; (3) Plaintiffs' Motion to Dismiss Defendant PUD's Extra-Contractual Affirmative Defenses [Dkt. 70].

Having considered the entirety of the records and file herein, the Court rules as follows:

- 1

**BACKGROUND**

On April 21, 2002 the embankment of Public Utility District No. 1 of Cowlitz County, Washington's (PUD) Swift No. 2 Power Canal failed. Nearly 800 million gallons of water drained into the Yale Reservoir, causing significant damage to the powerhouse, State Highway 503, and the adjacent switchyard. The PUD's insurers, Federal Rural Electric Insurance Exchange (Federated) and TIG Insurance Company (TIG) (collectively "the Insurers") filed an action on February 3, 2004 seeking a declaratory judgment that the Insurers are not liable for the PUD's losses. The Insurers also sued the PUD's difference in conditions ("DIC") carrier, Lloyds of London. Lloyds investigated the claim and paid the PUD 65 million dollars in settlement. Lloyds employed EES Consulting, JRP Engineering and Steve Larkin/McLarens Young as experts in the investigation of the PUD's loss. The PUD has since retained Lloyd's counsel to defend the suit against the Insurers and has hired EES Consulting and JRP Engineering as non-testifying consulting experts.

**1. Non-Parties' Motions to Quash Subpoenas and Motion for Protective Order**

Counsel for the PUD (Lloyds previous counsel) has moved on behalf of EES Consulting, JRP Engineering and Steve Larkin/McLarens Young to quash subpoena's served upon them seeking, in general, the adjuster's and engineering experts' files which make up Lloyds investigation file for the PUD's April 21, 2002 loss. They argue that the Court should quash the subpoenas and issue a protective order because to produce the discovery sought would be unduly burdensome and because the plaintiffs' have access to all the "source" documents Lloyds used to adjust the claim. Plaintiffs' counter that the discovery sought is "reasonably calculated to lead to the discovery of admissible evidence [ ]" *Fed.R.Civ.P. 26(b)(1),* and is not unduly burdensome.

The Court has the inherent power to limit discovery and to protect parties and non-parties alike from oppressive discovery. *See eg.*, *Fed.R.Civ.P. 26(b)(2), 26(c), and 45(c).* When faced with a claim that the discovery requested would be unduly burdensome, the Court must consider whether the burden or expense of the proposed discovery outweigh its likely benefit, taking into account the

- 2

needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Fed.R. Civ.P. 26 (b)(2)(iii).*

A weighing of these factors tips the scales in favor of permitting the discovery. The burden and expense of gathering the documents is lessened here by the plaintiffs' agreement that the subpoenaed entities need not produce any documents that are already in plaintiffs' possession. The documents sought are "reasonably calculated to lead the discovery of admissible evidence" in that they are the investigation files of an insurer who adjusted the same loss at issue here. The amount in controversy is substantial–in excess of 70 million dollars, a factor which weighs in favor of the discovery sought. The non-parties make no claim that they would be financially harmed if they were to comply with the subpoenas other than the bare claim by Steve Larkin that "[i]t will be expensive for my office to copy the file, as it will result in the loss of manpower on other matters." *Affidavit of Steve Larkin, Dkt. 76.* And finally, the issues at stake are important–the basis for the collapse of the PUD's power canal and the Insurer's resulting financial responsibility – persuades this Court that non-privileged discovery should be had from whatever source it is found. Therefore, the non-parties motion to quash should be denied.

Lloyds seeks reimbursement for a "fair portion of the fees and expenses paid to their experts." *Motion, p.2 Dkt. 64.* Because this does not involve a situation where it is impracticable to obtain the discovery sought by other means as contemplated by Fed.R.Civ.P. 26(b)(4)(B), the Court declines to order plaintiffs to pay anything other than a "reasonable fee" to the expert for the "time spent in responding to" the subpoenas. *Fed.R.Civ.P. 26(b)(4)(C).*

**2. Defendant's Motion to Quash Subpoenas and Motion for Protective Order for EES Consulting and JRP Engineering.**

The defendant PUD also seeks to quash the subpoenas served on EES Consulting and JRP Engineering discussed above on the ground that EES Consulting and JRP Engineering are non-

- 3

testifying consulting experts and are thus protected from discovery pursuant to Fed.R.Civ.P. 26(b)(4)(B).  EES Consulting and JRP Engineering were originally retained by Lloyds to investigate the PUD's claim on the DIC coverage.  The PUD now argues that all information generated by the experts is non-discoverable.  The PUD is mistaken.  Rule 26(b)(4) precludes discovery of "facts known or opinions held" by a non-testifying consulting expert unless there is a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."  However, this rule does not preclude the discovery of information the consulting experts acquired prior to being retained.  *See Rocky Mountain Gas Company v. Cooper Industries, Inc.,* 166 F.R.D. 481 (D. Colo. 1996).

Here, EES Consulting and JRP Engineering were initially hired by Lloyds and investigated the PUD's claim for the same event which brings rise to the current litigation.  The "facts known or opinions held" by these experts are relevant information and are discoverable to the extent they were developed prior to being retained by the PUD.  *Rocky Mountain Gas Company*, 166 F.R.D. at 483.  Therefore, defendant's motion to quash should be denied.

### 3. Plaintiffs' Motion to Dismiss Defendant PUD's Extra-Contractual Affirmative Defenses.

Plaintiffs' seek to dismiss the PUD's Third, Fourth, Fifth and Sixth Affirmative Defenses on the ground that the affirmative defenses are substantially identical to the defendant's "bad faith" counterclaims which, by prior Order upon plaintiffs' unopposed motion, were previously bifurcated from the coverage issues.  The PUD responds in opposition to the motion that they have "no intention of circumventing this Court's Order by trying to litigate bad faith issues under the guise of an affirmative defense." *PUD's Opposition, p.3, Dkt. 82.*  They further argue that there are other bases than merely bad faith for the affirmative defenses, and that dismissal of the affirmative defenses

- 4

while discovery is still ongoing would be premature.[1]

The PUD's affirmative defenses at issue are:

### Third Affirmative Defense

Federated and TIG failed to comply with statutory provisions and other laws and regulations governing the acts of insurance providers in Washington.

### Fourth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of estoppel.

### Fifth Affirmative Defense

Plaintiffs' claims are barred by their bad faith.

### Sixth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of unclean hands.

*Answer, Affirmative Defense and Counterclaims, Dkt. 17.* The defendant posits grounds other than bad faith for all but the Fifth Affirmative Defense. The Court will consider the failure to address the Fifth Affirmative Defense as an admission that this defense should be stricken. A review of the PUD's arguments convinces the Court that it would be premature to dismiss the affirmative defenses because the remaining affirmative defenses have elements that arguably do not encompass purely "bad faith" as that cause of action is pled in the bifurcated counterclaims. Furthermore, the plaintiffs agree that based upon defendant's assurances that they are not seeking to litigate the bad faith counterclaims during the coverage phase of this trial that dismissal of the affirmative defenses prior to the completion of discovery would be premature. *Plaintiffs' Reply, p.4, Dkt. 86*. Plaintiffs may seek to renew their motion at the close of discovery. Therefore the plaintiffs' motion to dismiss

---

[1] The PUD also argues that the plaintiffs' motion should be a motion to strike rather than a motion to dismiss. The Court will treat the motion to dismiss as a procedurally correct mechanism for bringing the issue before the Court.

- 5

should be denied as to defendant's Third, Fourth, and Sixth Affirmative Defense, and should be granted as to the Fifth Affirmative Defense.  It is hereby

ORDERED that the Non-Parties Motion to Quash Subpoenas and Motion for a Protective Order [Dkt. 64] is DENIED.  The non-parties request for fees and expenses is also DENIED.  The Defendant's Motion to Quash Subpoenas and Motion for a Protective Order for EES Consulting and JRP Engineering [Dkt. 67] is DENIED.  The Plaintiffs' Motion to Dismiss Defendant PUD's Extra-Contractual Defenses [Dkt. 70] is DENIED as to the Third, Fourth and Sixth Affirmative Defense and is GRANTED as to the Fifth Affirmative Defense.

The clerk of the court is instructed to send uncertified copies of this Order to all counsel of record.

DATED this 2nd day of JUNE, 2005.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

- 6