HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE and TIG INSURANCE COMPANY,

Plaintiff,

v.

PUBLIC UTILITY DISTRICT NO. 1 OF COWLITZ COUNTY, WASHINGTON, a Washington municipal corporation,

Defendant.

Case No. C04-5052  RBL

ORDER

THIS MATTER comes before the Court on cross motions for summary judgment [Dkt. #s 130 and 135].  The defendants in this Declaratory Judgment action seek partial summary judgment declaring the efficient proximate cause of the April 21, 2002 damage tp the Swift #2 Power Canal and related structures to have been caused by a covered peril.  The plaintiffs seek an order from the Court declaring the loss to have been caused by an excluded peril, ending this coverage dispute in its entirety.  Both sides contend that the material facts are not in dispute and the Court can resolve all coverage questions without a trial.  The Court has reviewed the voluminous materials submitted in connection with the current motions and has reviewed its orders on other substantive motions.  The Court has also heard oral argument.  For the following reasons, the defendant's Motion for Partial Summary Judgment is **GRANTED** and the plaintiffs' Motion for Summary Judgment is **DENIED**.

## FACTUAL BACKGROUND

On April 21, 2002, the embankment of the PUD's Swift No. 2 Power Canal failed. Nearly 800 million gallons of water drained into the Yale Reservoir, causing significant damage to the powerhouse, State Highway 503, and the adjacent switch-yard. The engineering firm CH2MHILL was commissioned to conduct an investigation and determine the cause of the failure. According to CH2MHILL, the failure occurred in the following four phases:

1) Geologic Phase - development of lava tubes and cavities formed in the case basalt lining underneath the canal floor.

2) Piping Phase - the cave basalt lining under the canal floor began to erode into the cavities, creating tunnel-like voids.

3) Sinkhole Phase - the loss of material through piping formed a large sinkhole opening connecting the lava tube with the canal. This phase occurred quickly over the course of a few hours to a few days.

4) Embankment Failure Phase - a high volume of water flowed through the sinkhole and the lava tube leading toward the embankment. This rapidly eroded the foundation under the embankment, causing its eventual breach. This phase occurred within four hours.

Federated and TIG contend that all phases in the sequence of events are conditions expressly excluded from coverage: earth movement, flood, latent defects, and/or normal wear and tear. The PUD attributes its loss to an insured peril: sinkhole collapse.

In its current motion, the PUD quotes the testimony of a Federated/TIG expert to support its argument that, a) the facts are not in dispute, and b) the loss was attributable to sinkhole collapse:

> Q. So you're of the opinion that what happened April 21, 2002, a sinkhole formed?
>
> A. Yea. Right. . . .

Deposition of Gregory Pillori, July 26, 2005 (Exhibit A to the Declaration of Jennifer Hoffman) at 40:12-14.

> Q. How did this sinkhole form?
>
> A. As I say, there was probably a nest - or maybe nest is not the correct term, but a series of piping channels that were working their way under the basalt caused by seepage and the movement of groundwater under the basalt, and when they reached the edge of the basalt, the hydraulic gradients were very high between the piping channels and the soil at the bottom of the forebay. And that sudden release of soil, which I think is about 30 feet - that sudden release of soil between the forebay and the end of the piping channels is what's called the sinkhole. And that happened - that probably happened very quickly.

Deposition of Gregory Pillori, July 26, 2005 (Exhibit A to the Declaration of Jennifer Hoffman) at 48:18-49:3.

> Uplift pressures under the basalt downstream of the embankment prior to formation of the sinkhole would not have been sufficient to cause a blowout. Once the sinkhole formed the pressures rose in the piping channels to essentially the canal hydraulic head and the blowout followed rapidly.

Pillori Associates, Geotechnical Engineering Report: Failure of Swift No. 2 Power Canal Embankment, November 2003 (Exhibit B to the Declaration of Jennifer Hoffman) at 52.

Based upon this and similar testimony from other experts, the PUD concludes that it was the formation and collapse of the sinkhole which had the greatest influence in causing the loss and was therefore the efficient proximate cause of the loss. Since sinkhole collapse is a covered peril, the entire loss is covered by the Federated/TIG policies.

For their part, Federated/TIG argue that the efficient proximate cause test does not apply because there was but one act or event that led to the embankment failure: hydrostatic pressure of water beneath the ground surface, seeping and flowing through the embankment wall and its foundation. They further assert that this peril is excluded, and they seek an order declaring the loss uncovered.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## DISCUSSION

The interpretation of an insurance policy is a question of law and policies are to be construed as a whole with the Court giving force and effect to each clause in the policy. *Queen City Farms v. Central National Insurance Co.,* 126 Wn.2d 50, 59-60 (1994). Overall, the policy should be given a practical and

1  reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion,
2  or that renders the policy nonsensical or ineffective. *Transcontinental Ins. Co. v. Washington Public*
3  *Utilities Districts' Utility System*, 111 Wn.2d 452, 456-457 (1988).

4  The issue of proximate cause is a question of fact relegated to the jury. Proximate cause becomes
5  a question of law for the Court when the facts are undisputed and the inferences therefrom are plain and
6  incapable of reasonable doubt or difference of opinion. *Graham v. Public Employees Mutual Ins. Co.*, 98
7  Wn.2d 533 (1983). Although the parties contend that all material facts are undisputed, the Court must
8  conduct its own review of those facts to determine that the summary judgment standard is met.

9  The Court's review of the facts confirms that there is a consensus among the parties that the
10 failure of the embankment, with its accompanying damage to structures, occurred shortly after a sinkhole
11 formed to connect the canal water with tunnels, or voids, caused by piping that directed the massive
12 volume of water, under high pressure, to the toe of the embankment. The failure occurred within a short
13 time after the creation of the sinkhole.

14 Two provisions of the relevant insurance policy (both exclusions) are primarily implicated by the
15 failure sequence: a) earth movement, and b) losses resulting from water.[1] Federated's All Risk Blanket
16 policy states under "losses not covered":

> 2. Losses resulting from earth movement:
>
> a. Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if loss or damage caused by fire or explosion results, Federated will pay for that resulting loss or damage.
>
> 3. Losses resulting from water:
>
> a. Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
>
> b. Mudslide or mudflow;
>
> c. Water that backs up from a sewer or drain; or
>
> d. Water under the ground surface pressing on, or flowing or seeping through:
>
>   (1) Foundations, walls, floors or paved surfaces;

---

[1] Plaintiffs also assert that the failure sequence may invoke the exclusion for latent defects or the exclusion for wear and tear. Piping is a naturally occurring process. As such, it does not constitute a defect. Nor is it subject to normal wear and tear. Piping under this facility was also well known and was therefore not latent.

ORDER
Page - 4

   (2)  Basements, whether paved or not; or
   (3)  Doors, windows or other openings.  But if loss or damage by fire, explosion or sprinkler leakage results, Federated will pay for that resulting loss or damage.

  The evidence established, and the parties all agree, that piping is a form of erosion. It occurred over the more than 40-year history of the Power Canal and created a network of passages beneath the Power Canal. Piping is a form of subsurface earth movement and earth movement is excluded under the policy. The insurers further argue that piping represents a latent defect that is also an excluded peril.

  On April 21, 2002 a sinkhole collapse occurred. The sinkhole formed as a result of piping. Although it results from earth movement, sinkhole collapse is not an excluded peril because it is specifically excepted from the exclusionary language. This Court ruled on July 21, 2004, that sinkhole collapse is a covered peril.

  The sudden release of soil, the last 30 feet or so, between the piping channel and the floor of the Power Canal caused millions of gallons of water to travel, under significant hydrostatic pressure, to the toe of the embankment. The water pressure pressing against the embankment was the immediate cause of the loss. The insurers argue that water under hydrostatic pressure was the only cause of the loss and was an excluded peril.

  According to Washington law, the term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the event complained of and without which such event would not have happened. There may be more than one proximate cause of an event. Wn. Pattern Jury Instruction  WPI 15.01. Where two or more distinct perils operate to cause a loss, Washington courts apply the "efficient proximate cause" test. *Graham v. Public Employees Mutual Ins. Co.*, 98 Wn.2d 533 (1983). For the efficient proximate cause doctrine to apply, there must be two separate or distinct perils which "could have each, under some circumstances, have occurred independently of the other and caused damage." *Finn v. Continental Ins.,* 218 Cal. App.3d 69, 72 (1990).

  The parties dispute whether the "efficient proximate cause" test applies to the facts of this case. Federated/TIG argue that there is one proximate cause, which is the immediate cause of the loss: hydrostatic pressure of water beneath the ground surface, seeping and flowing through the embankment wall and its foundation. They cite *Ovbey v. Continental Ins. Co.,* 613 F. Supp. 726 (N.D. Ga. 1985) as authority for their position. In *Graham v. Public Employees Mutual Ins. Co., Id*. at 537-538, Washington

rejected the immediate cause analysis of causation when determining insurance coverage. Instead of the immediate cause analysis, Washington courts apply the test outlined in the above-quoted jury instruction.

The PUD argues that there are two or more distinct perils at work here and the efficient proximate cause test applies. Under that test it is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events. *Graham, Id*. at 538.

Under the circumstances of this case, it does not appear to this Court that the outcome is different when applying one test rather than the other. The event that caused the loss at Swift #2 Canal was sinkhole collapse. That event set in motion, in a direct sequence, unbroken by any new independent cause, forces which resulted in the loss. Without the sinkhole collapse, the failure of the embankment would not have happened. Hydrostatic pressure of water beneath the ground surface may have been the last event, the immediate cause of the loss, but it was not the triggering event. Similarly, piping under the ground may have contributed to the loss but it did not lead inevitably and inexorably to the loss. It is the sinkhole collapse, which occurred suddenly and unexpectedly to create a clear pathway for the water in the canal to the toe of the embankment, that led inevitably and inexorably to the failure of the embankment. The mechanism by which failure occurred may have been water under hydrostatic pressure but the proximate cause was sinkhole collapse. Sinkhole collapse is a covered peril. The policies issued by Federated and TIG therefore cover the damage to the canal, powerhouse, switch yard and any other covered property damaged as a result of the embankment failure.[2]

---

[2] Although unnecessary for resolution of the coverage questions in this case, the Court is of the opinion that the exclusion in the plaintiffs' policies for "water under the ground" has the general meaning of "subterranean waters" whether percolating waters or underground streams and not to impounded water released suddenly as is the case here. *See, Hatley v. Truck Ins. Exchange,* 261 Or. 606, 495 P.2d 1196 (1972) and *Adrian Associates v. National Surety Corp.,* 638 S.W.2d 138 (Tx, 1982). The exclusion therefore does not apply to the circumstances of this case.

Defendant's Motion for Partial Summary Judgment [Dkt. #130] is **GRANTED**; plaintiffs' Motion for Summary Judgment [Dkt. #135] is **DENIED.**

DATED this 3rd day of March, 2006.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE