HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FEDERATED RURAL ELECTRIC
INSURANCE EXCHANGE and TIG
INSURANCE COMPANY,

        Plaintiffs,

        v.

PUBLIC UTILITY DISTRICT NO. 1 of
COWLITZ COUNTY, WASHINGTON, a
Washington municipal corporation,

        Defendant.

Case No. C04-5052  RBL

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment [Dkt. #185] and Defendant's Cross-Motion for Summary Judgment [Dkt. #194]. Plaintiffs have moved to strike the defendant's cross-motion for summary judgment as untimely [Dkt. #198]. Because the defendant's motion for summary judgment responds directly to the same issues raised in plaintiffs' motion and because the Court's response to plaintiffs' motion would lead inevitably to a summary judgment motion by defendant, the motion to strike is **DENIED.**

This Court has previously entered orders which resolved questions as to whether the loss in question was caused by an insurable event. [Dkt. #s 75, 173]. In those orders, the Court described the events leading up to the loss which is the subject of this dispute. The current motions focus upon coverage issues regarding specific categories of loss incurred by the insured. The events that followed the occurrence are now relevant to the Court's analysis.

ORDER
Page - 1

**FACTS**

On the morning of April 21, 2002, the District's Swift No. 2 Power Canal ("Swift No. 2") suffered a catastrophic embankment failure.  An investigation into the cause of the failure was conducted under the control and supervision of the Federal Energy Regulatory Commission (FERC).  FERC is the federal agency with regulatory control over Swift No. 2 and is responsible for overseeing its safety.  On June 5, 2002, FERC directed the District to retain an independent board of expert consultants "to investigate the cause of the canal embankment dam failure, propose a method(s) of reconstruction, and review the designs, plans and specifications, and reconstruction of the project for safety and adequacy."  With FERC's approval, the District retained the professional engineering firm CH2M Hill to investigate the cause of the canal failure.  On June 19, 2002, FERC approved a three-member Board of Consultants ("Board") to oversee the investigation and reconstruction efforts.

On November 19, 2002, the District, under the supervision of the FERC board, selected Washington Group International, Inc. as the engineering firm to assist with the redesign and reconstruction of Swift No. 2.  On November 14, 2003, and again on December 4, 2003, FERC advised the District that in order to meet its obligation under its license to design, construct, operate, and maintain the project in a safe and reliable manner, the District was required to make certain upgrades.  See FERC letter of December 4, 2003 attached as Exh. A to Affidavit of Gary Huhta [Dkt. #195].

The District has estimated its total loss from the canal failure at $135,000,000.  Federated/TIG and the District's DIC carriers (Lexington Insurance Company and Certain Underwriters at Lloyd's, London ("Lloyd's")) provided the District with coverages totaling $170,000,000.  Not surprisingly, the policies did not provide identical coverages.  For example, Federated/TIG did not provide coverage (or provided limited coverage) for certain risks that Lloyd's insured (i.e., business interruption - replacement power and business income - and code upgrades).

Lloyds acknowledged coverage and paid their $70,000,000 policy limit.  Federated/TIG denied coverage and initiated this Declaratory Judgment action.  Lloyd's assumed responsibility for the District's effort to recover from Federated/TIG under an arrangement that allowed Lloyd's to be paid a portion of any amounts received from Federated/TIG.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## DISCUSSION

### A.    Code Upgrades

During the course of any major reconstruction effort there will be expenses incurred to hopefully make the rebuilt structure(s) better than before the loss. In the aftermath of the canal failure, some of the expenses incurred in reconstruction can be characterized broadly as upgrades. Federated/TIG contend that they do not cover such costs because they were unrelated to the canal failure. They also assert that the District should be judicially estopped from claiming any of these costs because the District had previously claimed that Lloyd's had already paid for Code upgrades. It is also argued that to the extent Federated/TIG do cover these repairs, coverage is limited to their policies $1,000,000 sub-limit for betterment or upgrades.

Three types of potential upgrades readily come to mind as the Court pours through the voluminous documents filed by the parties in connection with this motion. First, there may be voluntary upgrades that the insured decides to pursue for its own reasons, without prodding from outside authorities. Second, there may be expenses incurred at the behest of a regulatory agency that would have been required with or without the insured loss and resulting reconstruction work. Finally, there may be improvements required by a regulatory body which would not have been compelled but for the loss and subsequent repairs. Although the parties both

1    seek summary judgment on this issue as to a number of specific cost items, the Court has not been given

2    sufficient information about each targeted cost to render a decision.

3           Clearly, voluntary upgrades are not covered by the Federated/TIG policies, and the District's responses

4    to request for admission (Exh. 9 to Declaration of Ronald J. Clark - Dkt. #186) suggest that the District is not

5    seeking coverage for such costs.  As for the second category of upgrades, the Court observes that the parties

6    have not identified costs fitting into this category and no argument has been made as to whether such expenses

7    would be covered.  As for category three expenses, however, the District argues persuasively that at least some

8    costs singled out by Federated/TIG represent upgrades mandated by FERC in order for the District to operate

9    under its license in a safe and reliable manner.  It acknowledges that coverage for such upgrades is limited to

10   the $1,000,000 sub-limits but demand that those sub-limits be paid.

11          The Court agrees that all construction required by FERC in connection with the reconstruction of Swift

12   2 that would not have been required but for the need to rebuild the failed canal are covered by the

13   Federated/TIG policy up to the $1,000,000 sub-limit.  Because Swift 2 consists of an integrated series of

14   structures, these covered upgrades are not limited to the precise area of the original damage but extend to the

15   entirety of the three mile long canal.  If FERC required an upgrade and would not have required the

16   improvement had there been no prior failure of the canal, the upgrade is covered.

17          Although the District provides strong evidence that the lining of the canal is a covered upgrade, the

18   Court is not prepared to conclude as a matter of law that there is no genuine issue of material fact regarding

19   the "but for" issue described above. There is clearly insufficient information now available to the Court for the

20   Court to determine as a matter of law that the other costs targeted in the motion meet the "but for" test.  Both

21   the motion for partial summary judgment and the cross motion for summary judgment regarding upgrades are

22   **DENIED.**

23          Furthermore, the Court rejects the insurer's argument that the District is judicially estopped from

24   seeking coverage from Federated/TIG for those upgrades that have been required by FERC as part of the

25   reconstruction effort.  Judicial estoppel is an equitable doctrine that precludes a party from gaining an

26   advantage by asserting inconsistent positions. Courts addressing this issue consider: (1) whether a party's later

27   position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a

28   court to accept its earlier position so that judicial acceptance of the later position would create the perception

that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001).  Any statement by the District that Lloyd's paid the upgrade costs is not "clearly inconsistent" with the District's position that Lloyd's paid the upgrade expenses subject to Federated/TIG paying its $1,000,000 sub-limits.  At no time has this Court been misled by the District's representations regarding Lloyd's payments for upgrades.  Addendum No. 3 of Lloyd's Difference in Conditions Policy requires Lloyd's to pay increased costs to repair or reconstruct insured property if those increased costs result from the enforcement of a law or ordinance regulating said repairs. Federated/TIG are required to pay those same costs up to their $1,000,000 sub-limits.  The District is not estopped from collecting the $1,000,000 sub-limit for costs related to upgrades and betterments.

**B.      Pollution Clean Up**

The parties agree that Federated/TIG cover only $10,000 in pollutant clean up costs arising out of the canal failure and reconstruction effort.  There is no issue for the Court to resolve.

**C.      Replacement Power**

Federated/TIG argue that because the District's contract with Pacific Corp. limits the District's share of the Swift No. 2 generation to 26% of the total power generation, the District's replacement power claim should be limited to 26% of the total loss.

Since 1957 the District and Pacific Power & Light Co., now Pacific Corp., have been parties to a power contract which allocates the sharing of power generated by separate but coordinated facilities operating on the Lewis River in the State of Washington.  Pacific Corp. owns three power plants:  Swift Plant 1, the Merwin Plant and the Yale plant.  The District owns Swift Plant 2.  Pursuant to their contract, the parties share the power generated by all of the facilities but each bears responsibility for producing all of the power generated by the facility(ies) they own.  The contract also requires each party to insure against the loss of up to 100% of the power produced by their respective facility(ies).  The District paid to Lloyd's 100% of the premium to cover 100% of the power generated by Swift 2 and Lloyd's has paid 100% of the loss attributable to the District's replacement power claim (excess to Federated/TIG's $2,500,000 sub-limit).  Under the

1  circumstances, the argument that the District replacement power claim submitted to Lloyd's should have been

2  limited to 26% of the total loss is rejected.  Federated/TIG's motion for summary judgment on this issue is

3  **DENIED.**

4  **D.      Questions of Faulty Design and Negligent Construction in the Reconstruction of the Canal.**

5         A lawsuit is currently pending in this Court between the District and its primary contractor on the

6  reconstruction project.  *Kiewit Pacific Co. v. PUD No. 1 of Cowlitz County, Wa.,* CV06-05274RBL.  In the

7  action, there are allegations that the repair/reconstruction costs were higher than necessary due to the

8  negligence of designers, engineers, or contractors involved in the project.  Federated/TIG's motion seeks to

9  convert these allegations to a verity and to have dollar amounts recited in the claims deducted from the

10  District's demand in this case.  They argue that these costs are not proximately caused by a covered event.

11  The District responds by stating the obvious: the cause of these additional costs is not yet resolved.  (Para. 8

12  of Affidavit of H. Huhta - Dkt. #195.)  Because the moving party relies solely on unproven allegations

13  contained in a complaint, the motion must be **DENIED** without prejudice.  It is far from an established fact

14  that anyone has been negligent in connection with the reconstruction effort or that associated costs are not

15  covered by the Federated/TIG policy.

16  **E.      Attorney Fees**

17         The parties have devoted virtually no time or creative energy to the question of whether attorney fees

18  and costs incurred by the District in pursuing claims against Kiewit are recoverable against the insurer.  The

19  District claim these costs were incurred to mitigate the damages recoverable from its insurers.  No citation is

20  offered in support of either party's position.  The Court is skeptical about the District's claim on this issue but

21  given the record before the Court, the issue cannot be decided as a matter of law.  The motion as to this issue

22  is **DENIED**.

23  **F.      Prejudgment Interest**

24         In federal diversity cases, prejudgment interest is governed by state law.  *Fidelity Federal Bank, FSB*

25  *v. Durga Ma Corp.,* 387 F.3d 1021, 1024 (9th Cir. 2004).  Under Washington law, prejudgment interest is only

26  able to be awarded: (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated"

27  claim is for an amount due upon a specific contract for the payment of money and the amount due is

28

1  determinable by computation with reliance to a fixed standard contained in the contract without reference to

2  opinion or discretion.  *Litho Color, Inc. v. Pacific Employers Ins. Co.,* 98 Wash. App. 286, 300-301 (1999).

3       Federated/TIG argue that the District has repeatedly acknowledged that all repairs would not be

4  completed until July 31, 2006 and that the complete extent of damages would not be known until that time.

5  The District counters that the repair contracts were for specified amounts and that the vast majority of the

6  District's damages were ascertained long ago and represent liquidated damages.  The District also claims that

7  because of Federated/TIG's breach of its insurance contract, it was forced to borrow funds to pay for the

8  reconstruction of the power canal.  The District asserts that the cost of these borrowed funds is an item of

9  damage arising from its insurer's breach.  Finally, the District argues that because Federated/TIG breached its

10  contract with the District the insurers are not allowed to enforce policy conditions requiring the filing of a more

11  formal proof of loss.

12       The Court is satisfied that there exist many unresolved issues of fact that require the denial of any

13  motion for summary judgment.  From the paucity of information supplied to the Court by the parties on this

14  issue it is impossible to identify the specifics of any pre-judgment interest claim or to apply the claim to any

15  particular legal theory upon which a claim might stand or fall.  The motions for partial summary judgment and

16  cross-motion for summary judgment are **DENIED** as to the issue of pre-judgment interest.

17  **G.    Abandoned Claims**

18       Federated/TIG seek an order dismissing claims which they contend have been abandoned by the

19  District.  Whether or not the claim for such items were ever a part of the instant lawsuit is unclear but the

20  District is not opposed to the elimination of any damage claim for the following construction costs:

21            •    Widening the power canal from 45 feet to 65 feet;

22            •    Surge arresting structure;

23            •    Turbine runners;

24            •    Penstock flow meters.

25  As to these items of damage, Federated/TIG's motion for partial summary judgment is **GRANTED**.

26  //

27  //

28  //

1

## CONCLUSION

2

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment [Dkt. #185] is

3   **GRANTED IN PART AND DENIED IN PART** and the Defendant's Motion for Summary Judgment

4   [Dkt. #194] is **DENIED WITHOUT PREJUDICE**.

5

**IT IS SO ORDERED.**

6

DATED this 19th day of September, 2006.

7

8

9

_____
RONALD B. LEIGHTON

10   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 8