The Honorable Ronald B. Leighton

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FEDERATED RURAL ELECTRIC
INSURANCE EXCHANGE and TIG
INSURANCE COMPANY,

                    Plaintiffs,

        v.

PUBLIC UTILITY DISTRICT NO. 1 OF
COWLITZ COUNTY, WASHINGTON, a
Washington municipal corporation,

                    Defendant.

NO.   CV04-05052 RBL

DEFENDANT PUD'S, MOTION FOR
ATTORNEY FEES, PREJUDGMENT
INTEREST AND OTHER DAMAGES

Noted: June 14, 2007

### Introduction & Background

On April 21, 2002, the Defendant Public Utility District No. 1 of Cowlitz County, Washington (the "District" or "PUD") suffered a catastrophic loss to its Swift No. 2 project when a large sinkhole collapsed in the canal's forebay.  The District notified all of its insurers of the loss. The District's DIC insurers, Lexington and Lloyd's, promptly accepted coverage and paid their policy limits.  However, the District's All Risk property excess insurer, TIG, investigated for over two years before ultimately denying the claim.

Contemporaneously with its coverage denial, TIG filed suit against the District seeking a "no coverage" ruling.  Initially, TIG argued that the policy excluded earth movement (**including** a sinkhole collapse).  But in July 2004, the Court rejected TIG's argument and held,

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

as a matter of law, that TIG insured damages caused by the peril of sinkhole collapse.  TIG then argued, after almost two years of discovery, that the cause of loss was the excluded peril of earth movement, not sinkhole collapse.  But in March 2006, the Court rejected TIG's argument and held, as a matter of law, that the loss' proximate cause was a sinkhole collapse.

When those two arguments failed, TIG attacked the District's damages and argued that the District spent too much money, the repairs took too long, and that the District's covered loss fell below $95,000,000.  In attacking the District's damages, TIG challenged the scope of the District's code upgrade and business interruption coverage under the DIC policies.  Thus, TIG continued to disclaim coverage on the basis that the District's total insured loss fell below TIG's $75,000,000 xs $25,000,000 layer.[1]

In September 2006, the Court resolved some of these coverage issues in the District's favor.[2]  The Court also ordered the parties to Appraisal to determine the loss' quantum.  And, in April 2007, the Appraisal Panel calculated the District's total loss at $125,497,225 (only $300,000 less than the District's claim) thereby obliterating TIG's argument regarding the magnitude of the District's insured loss.  Overall, in order to avoid paying the District for its losses, TIG unsuccessfully asserted three different coverage arguments.

Currently before the Court is the District's "Motion to Enter Judgment Against TIG Pursuant to the Appraisal Findings."  That motion seeks $30,397,225 from TIG for its direct damages as a result of the April 21, 2002 loss.  In addition, the District now seeks attorneys' fees, prejudgment interest, and other damages as a result of TIG's wrongful coverage denial and breach of contract.  Specifically, the District seeks the following:

1. Attorneys' fees and expenses for proving coverage.

---

[1] In fact, TIG still continues to challenge coverage in its Motion for Summary Judgment and Alternative Motion for Summary Judgment [Document No. 249].

[2] See Court's September 19, 2006 Order resolving code upgrade and business interruption coverage issues [Document No. 220].

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL] - 2

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

2. The cost to collect insurance proceeds from TIG.

3. A ruling that TIG's "ultimate net loss" should take into consideration the costs that the District incurred to effect the $95,000,000 recovery that TIG claims as a credit against the District's "actual loss sustained" of $125,497,225. Such a ruling would increase the amount TIG owes from $30,397,225 to $39,658,565.

4. Prejudgment interest on the $30,397,225 TIG owes the District.

In determining these issues, the Court should consider the following principles and facts:

- TIG wrongfully denied coverage.

- To establish coverage, the District incurred legal fees and expenses exceeding two million dollars.

- The District is entitled to maximize its insurance recovery.

- TIG has refused to accept coverage for the District's insured loss for more than five years.  In fact, TIG has filed a motion seeking a ruling that it owes nothing on the basis that TIG's excess policy has not yet been triggered.  And,

- The District is only asking to be put in the same financial position it would have been in had TIG not breached the insurance contract.

We discuss in more detail below the District's entitlement to attorneys' fees, prejudgment interest, and other damages as a result of TIG's wrongful coverage denial and breach of contract.

## I. The District is Entitled to Recover its Attorneys' Fees & Expenses for Proving Coverage As a Matter of Law

Well settled Washington law holds that forcing an insured "to file suit to obtain the benefit of their insurance contract" **entitles** them to recover attorneys' fees.[3]  The rationale for awarding attorneys' fees as compensation is explained in <u>Olympic Steamship Co., Inc. v. Centennial Insurance Co.</u>[4] where the Washington Supreme Court stated:

---

[3] <u>Olympic Steamship Co., Inc. v. Centennial Ins. Co.</u>, 117 Wash.2d 37, 52-53, 811 P.2d 673, 681 (1991); <u>McGreevy v. Oregon Mutual Ins. Co.</u>, 90 Wash.App. 283, 951 P.2d 798 (1998).
[4] 117 Wash.2d 37, 52-53, 811 P.2d 673, 681 (1991).

> When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not 'vexatious, time-consuming, expensive litigation with his insurer.'[5]

The above shows Washington's public policy seeks to curb vexatious, time consuming, and expensive litigation with insurers.  The <u>Olympic Steamship</u> Court also reasoned that "allowing an award of attorney fees will encourage the prompt payment of claims."[6]   In addition, Washington awards attorneys' fees to "make the insured whole."[7]

In this case, TIG denied coverage and filed suit against the District seeking a "no coverage" ruling on the basis that an excluded peril caused the loss and that there was no coverage under TIG's policy.[8]  The Court, however, rejected TIG's argument in three different rulings.  First, in July 2004, the Court held, as a matter of law, that TIG insured the peril of sinkhole collapse.[9]  Second, in March 2006, this Court determined that the proximate cause of the loss was a sinkhole collapse.[10]  Third, in September 2006, this Court determined that the District was entitled to recover for FERC required code upgrades and 100% of its business income loss.[11]  These three decisions meant that TIG incorrectly denied coverage.

As a result of TIG's coverage denial and contract breach, the District was forced to retain counsel, expert witnesses, and consultants in order to "obtain the benefit of its insurance contract" and defend "vexatious, time consuming, and expensive litigation."  In view of the

---

[5] <u>Id.</u>

[6] <u>Id.</u>

[7] <u>Panorama Village Condominium Owners Assoc. Board of Directors v. Allstate Insurance Co.</u>, 144 Wash.2d 130, 142, 26 P.3d 910, 916 (2001).

[8] <u>See</u> Federated Rural Electric <u>Insurance</u> Exchange's and TIG Insurance Company's Complaint for Declaratory Relief at ¶3.9 [Document No. 1].

[9] <u>See</u> Court's July 21, 2004 Order [Document No. 35].

[10] <u>See</u> Court March 3, 2006 Order [Document No. 173].

[11] <u>See</u> Court's September 19, 2006 Order [Document No. 220].

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 4

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

1    holding in <u>Olympic Steamship Co., Inc.</u>, the District is **entitled** to recover the attorneys' fees

2    incurred in proving coverage.[12]

3        In determining the amount of the fee award, the Court has independent and broad

4    discretion to award a "reasonable fee."[13]   Generally, courts apply the "lodestar" method to

5    arrive at a "reasonable fee."[14]   "The lodestar award is arrived at by multiplying a *reasonable*

6    hourly rate by the number of hours reasonably expended."[15]

7        In this case, the District retained Bruckmann & Victory, LLP's and Kingman Peabody

8    Fitzharris & Ringer to litigate against TIG.   As the attached documentation evidences, the

9    District identifies the rates and numbers of hours worked for specific tasks by each attorney.

10   The attached documentation also describes the type of work performed by Bruckmann &

11   Victory and Kingman Peabody Fitzharris & Ringer.   Multiplying these two numbers (counsels'

12   reasonable rates and counsel's reasonable hours worked) generates a lodestar fee of $960,348.[16]

13       Both law firms had reasonable hourly rates and worked a reasonable number of hours

14   on the case.   First, counsels' hourly rates were "reasonable" because they charged the District

15   their established billing rates.[17]   And, Washington holds that "when attorneys have an

---

12 The District maintains that it is entitled to recover for attorneys' fees and expenses from February 4, 2002 to date because TIG continues to challenge coverage and the extent of the benefit provided under its policy.  See Philips Oral Healthcare, Inc. v. Federal Ins. Co., 2005 WL 3020014 *4 (W.D. Wash.) (holding that disputes over the extent of benefits provided by an insurance policy including "allocation issues" fall under the rubric of coverage not valuation.)

13 <u>See</u> McGreevy, 90 Wash. App. 283, 951 P.2d 798.

14 <u>Id</u>.

15 <u>Id</u>. (Emphasis in the original).

16 The District submits documentation for its incurred attorneys' fees from February 4, 2004 through July 2006. Since TIG still challenges coverage, the District is requesting attorneys' fees and expenses from August 2006 to date.  However, the District has not been able to quantify the fees and expenses for this time period because the case is ongoing.  If the Court determines that the District is entitled to fees from August 2006 to date, the District requests that it be allowed to submit supporting documentation at the case's conclusion.

17 <u>See</u> Exhibit A attached to Declaration of Jennifer A. Hoffman (hereinafter "Hoffman Decl.").

---

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 5

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

established rate for billing clients, that rate will likely be a reasonable rate."[18]   Accordingly, this Court should determine that counsels' rates are "reasonable."[19]

Second, counsels' rates are consistent with Rule of Professional Conduct 1.5(a). Specifically, RPC 1.5(a) considers, *inter alia*, the following factors in determining whether a fee is reasonable:

- The time and labor required, novelty and difficulty of questions involved, the skill requisite to perform the legal service properly . . .

- Experience, reputation, and ability of the lawyer or lawyers performing the services.

- Amount involved in the matter on which legal services are rendered and the results obtained;[20]

In this case, counsels' rates and time spent are reasonable because:

- The parties engaged in lengthy discovery for over three years.

- Counsel participated in over forty expert and fact depositions.

- Counsel reviewed over 100,000 documents produced during discovery.

- Counsel filed and opposed several summary judgment motions on a variety of issues.

- The case involved scientifically complex issues and required analysis of testimony from several hydroelectrical and geotechnical engineers.

- TIG retained Bullivant Houser Bailey.  Thus, the District retained counsel that could rival Bullivant Houser Bailey's experience, reputation and ability.

---

[18] See Bowers v. Transamerica Title Ins. Co., 100 Wash. 2d 581, 675 P.2d 193 (1983).  We note that the Court can also consider opposing counsel's hourly rates. Absher Constr. Co. v. Kent Sch. Dist., 79 Wash. App. 841, 848, 917 P.2d 1086 (1995).

[19] Washington does not require "[a]n explicit hour-by-hour analysis of each lawyer's time sheets . . . ."  Absher Constr. Co., 79 Wash. App. at 848, 917 P.2d 1086.  At a minimum, the documentation needs to include (1) the number of hours worked; (2) the type of work performed; and (3) the category of attorney who performed the work.  See Bowers, 100 Wash. 2d at 597, 675 P.2d 193.

[20] See also Banuelos v. TSA Washington, Inc., 134 Wash. App. 607, 615, 141 P.3d 652 (2006).

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 6

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

- The District successfully argued three summary judgment motions and defeated TIG's **several** subsequent motions for reconsideration.

- The District successfully proved damages of $125,497,225 of which TIG owes $30,397,225.

In view of the above, this Court should determine that counsels' rates and time spent was "reasonable."

### A. The District is Entitled to Recover Expenses Incurred to Establish Coverage

In addition to recovering attorneys' fees, the District can also recover other necessary expenses of litigation such as expert witness fees incurred to prove and establish coverage.[21] For example, in Panorama Village Condominium Owners Assoc. Board of Directors v. Allstate Insurance Co., the insured filed suit against its property insurer for wrongfully denying coverage for hidden decay to its condominium. The insured retained an expert witness to help prove coverage and sought recovery of those fees.

The trial court included the expert fees as part of the recoverable attorneys' fees. But the Court of Appeals reversed that ruling and disallowed the expert witness fees. The Washington Supreme Court reversed the Court of Appeals and upheld the trial court's award of expert fees as part of the insured's recoverable expense. In so holding, the Panorama court stated:

> To make such plaintiffs whole, 'reasonable attorney fees' must, by necessity, contemplate expenses other than merely the hours billed by an attorney. The insured must therefore be compensated for **all** of the expenses to establish coverage as part of those attorney fees which are reasonable.[22]

The above holding entitles the District to recover **all** of the expenses it incurred to establish coverage as part of its attorneys' fees, including expert witness fees.

---

[21] See Panorama Village Condominium Owners Assoc. Board of Directors, 144 Wash.2d at 142, 26 P.3d 910 (2001).

[22] Id at 144, 26 P.3d 910 (Emphasis in the original).

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 7

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

Here, the District retained five experts and consultants to assist it with establishing coverage.  Specifically, the District spent $629,881 from February 4, 2004 through July 2006 for the following five experts and consultants:

| Consultant | Purpose | Total Invoiced from February 4, 2004 through July 2006 |
|---|---|---|
| Zipper Zeman Associates, Inc. | Cause of loss expert | $81,320.08 |
| JRP Engineering, Inc. | Construction consultant | $9,952.41 |
| CDK Construction, Inc. | Construction consultant | $7,631.25 |
| EES Consulting | Business Income Loss expert | $77,819.63 |
| McLarens Young International | District's adjuster | $163,828.33 |
| Doug G. Peterson & Associates Inc. | Machinery & Equipment Consultant | $42,805.32 |
| RGL Forensic Accountants | Accounting experts | $246,524.70 |
| **TOTAL** | | **$629,881.72** |

The above chart shows that the District spent $629,881 for its seven experts and consultants.  In addition, the District also incurred $64,253 for other litigation expenses.[23]

In summary, the evidence demonstrates that TIG incorrectly denied the District's claim and breached the insurance contract.  That incorrect denial and contract breach forced the District to litigate for over three years.  As a result, the District incurred attorneys' fees and expenses that exceed $2,000,000.  The District is entitled to recover these attorneys' fees and expenses in order to be made whole as a result of TIG's incorrect denial.  Accordingly, the District requests that this Court enter judgment against TIG for attorneys' fees and expenses.

---

[23] This figure includes $12,843 in computerized legal research fees, which is also a recoverable expense.  See Absher, 79 Wash. App. at 848, 917 P.2d 1086.  It also includes reasonable and necessary transportation, lodging, food and telephone expenses.  See Condominium Owners Assoc. Board of Directors, 144 Wash.2d at 143, 26 P.3d 910 (2001) citing Palmigiano v. Garrahy, 707 F.2d 636 (1st Cit. 1983).

DEFENDANT PUD'S MOTION FOR ATTTORNEYS FEES, INTEREST AND OTHER DAMAGES [CV04-5052RBL]  - 8

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

In this regard, the District submits documentation for attorneys' fees and expenses from February 4, 2004 to July 2006 totaling $1,655,083.41.  As the case is ongoing, the District requests that it be allowed to submit supporting documentation for time incurred from August 2006 to date at the case's conclusion.

## II. The District is Entitled to Recover All Damages Incurred As a Result of TIG's Breach of Contract

The District has already established that TIG's April 21, 2002 coverage denial breached the insurance contract.  Thus, in addition to TIG's payment for the direct damages the District incurred in repairing Swift No. 2, the District is also entitled to other damages that make it whole.  Specifically, TIG is responsible for the following:

- All damages that naturally flow from TIG's breach of contract; and

- Lost opportunity costs

We discuss below the District's damages in more detail.

## A. The District is Entitled to Recover All Damages that Naturally Flow from TIG's Breach of Contract

In Washington, a breaching party is responsible for all damages that naturally flow from a contract breach.[24]  The purpose of awarding damages is to place the aggrieved party in the "same economic position he would have been in if the contract had been performed."[25]  These damages are commonly referred to as "expectation damages."   In this case, the cost the District incurred in recovering the insurance proceeds from TIG constitutes "expectation damages."

---

[24] See Floor Express, Inc. v. Daly, -P.3d -, 2007 WL 1470591 *2 (Wash.App. Div. 2); 25 Wash. Prac., Contract law And Practice §14.4.

[25] Id.; 25 Wash.Prac. Contract Law And Practice at §14.3.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 9

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

Specifically, TIG's coverage denial and declaratory judgment action put the District, a non-profit public utility, in an unfortunate and difficult position. Specifically, the District had to cope with the following double whammy:

- Find the resources to repair Swift No. 2; and

- Litigate a protracted and expensive coverage dispute for an unknown and indefinite period of time.

Faced with the above double whammy, the District borrowed funds to effect repairs and entered into an agreement with Lloyds whereby Lloyds agreed to front all litigation costs.[26] Lloyd's also allowed the District the use of Lloyd's consultants, experts, and counsel to litigate against TIG. In exchange for fronting the litigation costs, the District agreed to pay Lloyd's 40% of any recovery.[27]

This agreement with Lloyds offered relief from the double whammy for several reasons. First, the District had virtually no prior insurance losses or experience litigating a complex coverage dispute. Thus, the District received the benefit of having Lloyd's consultants, experts, and counsel. Second, from the start of this case, it was uncertain if the District would be able to collect the full $55,497,225 balance of its loss from Federated and TIG ($125,497,225 - $70,000,000 payment from Lloyd's = $55,497,225). Thus, the agreement enabled the District to prosecute the case without putting a financial drain on its already limited resources.

In April 2007, the Appraisal Panel determined that the District's damages totaled $125,497,225. Thus, TIG owes at least $30,397,225.[28] Assuming the Court enters judgment against TIG for this amount, the District will have to give Lloyd's 40% of the net recovery

---

[26] See Amended Loan Receipt Agreement attached as Exhibit B to Hoffman Declaration.

[27] Id.

[28] $125,497,225 total appraised damages - $70,000,000 from DIC carriers - $25,000,000 from Federated - $100,000 Federated deductible = $30,397,225.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL] - 10

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

($12,158,890). This amount represents the District's "expectation damages" because this is the amount TIG needs to pay the District in order to put the District in the same economic position that it would have been in if TIG had honored the contract.

Obviously, if TIG had not breached its contract and sued the District, the District would **not** have had to enter into such an agreement with Lloyd's. Thus, the $12,158,890 the District will have to give to Lloyd's constitutes a loss that naturally flows from TIG's breach. The District should be able to recover this amount from TIG in order to put it in the same economic position it would have been if TIG had honored the insurance contract. In view of the foregoing, this Court should subscribe to the general rules governing damages and hold that TIG is responsible for additional damages to the District as a result of its breach of contract.

**B. The District is Entitled to Recover its Lost Opportunity Costs**

As discussed above, the District is entitled to recover from TIG the money it will have to give Lloyd's as a consequence of TIG's breach of contract. Moreover, the Court can properly characterize these damages as lost opportunity costs, which are recoverable in Washington.

Lost opportunity costs represent the value of what a party could have done with its assets if the breach did not occur. Thus, lost opportunity costs sometimes concern lost income the party would have earned if they did not have to take the money out of its pocket to effect repairs.

For example, in <u>Washington Public Power Supply System v. General Electric Co.</u>,[29] plaintiff WPPSS asserted that GE defectively designed a containment system. As a result, WPPSS was required to retrofit the containment. The retrofit cost WPPSS approximately

---

[29] 1989 WL 306200 (E.D. Wash.).

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

1   $297,000,000. Of this amount, WPPSS borrowed approximately $229,000,000 by selling
2   bonds.

3       WPPSS used its own funds to meet its interest obligations on the bonds. And, WPPSS
4   sought the lost "opportunity cost" of having to use its own funds to pay interest instead of being
5   able to invest and earn interest.[30]

6       The Washington Supreme Court held that it would permit an award of damages for the
7   lost opportunity (i.e., cost of capital) if the plaintiff could show, with reasonable certainty, the
8   following:

9           • when expenses were incurred,

10          • the amount outstanding during the period of delay, and

11          • what interest rate could have been earned."[31]

12  The above factors allow a court to award "opportunity costs" because they can be determined
13  with reasonable certainty.

14      In WPPSS, the lost opportunity stemmed from WPPSS having to **give up** something of
15  value (i.e., its own cash to pay the interest on bonds.) Here, the District's lost opportunity
16  stems from having to **give up** something of value (i.e., a contractual right to keep 100% of any
17  recovery from TIG for its breach of contract.) Thus, as a result of the breach of contract, both
18  WPPSS and the District had to give up something of value. In this regard, the following factors
19  will help the Court determine the value of that loss, with reasonable certainty:

20          • the amount given up (i.e., 40% of the net recovery) and

21          • the reasonableness of the Amended Loan Receipt Agreement.[32]

22  In this case, the District's Amended Loan Receipt Agreement was reasonable because it
23  allowed the District to prosecute the case against TIG without putting additional strain on its

24
_____

25  [30] Id. at *3.

    [31] Id. at *7.

    [32] See Amended Loan Receipt Agreement attached as Exhibit B to Hoffman Declaration.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL] - 12

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

own limited resources.  At the time the District and Lloyd's signed the Agreement, the amount the District would be able to recover from TIG was unknown.  Moreover, the District understood that litigating against TIG would be a tremendous undertaking with respect to both time and money.  Thus, the Amended Loan Receipt Agreement allowed the District to recover the majority of its losses without having to front any litigation costs.

In exchange, the District gave up the benefit of receiving 100% of any recovery from TIG.  Thus, the 40% that the District has to give Lloyd's is a lost opportunity cost, which the District should be able to recover from TIG.

### III.   The District's "Ultimate Net Loss" Should Include the Cost to Collect the $95,000,000 that TIG Claims as a Credit

TIG's policy wording allows the District to recover the costs to collect the $95,000,000 that TIG claims as an offset  against the District's total "actual loss sustained" of $125,497,225. Specifically, TIG's policy defines "ultimate net loss" as follows:

> "Ultimate net loss" shall mean the **actual loss sustained** by the Insured as a direct result of the perils insured against by the policy(ies) specified in Paragraph II.  Primary/Underlying Insurance, after making deductions for: deductible(s) and/or other self-insured retention(s) to be borne by the Insured, salvage recoveries and all other recoveries except this Agreement. (Emphasis added).[33]

The above definition means that the District's "ultimate net loss" is its "actual loss sustained" after making deductions for Federated's $100,000 deductible and **"all other recoveries."**

In this case, the District's "ultimate net loss" can be calculated as follows:

|  | $125,497,225 | Actual loss sustained |
|---|---|---|
| - | $100,000 | Federated deductible |
| - | $70,000,000 | Recovery from Lloyds |

---

[33] Id.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 13

1          -          $25,000,000          Recovery from Federated

2          Subtotal          $30,397,225

3  However, in securing the recoveries, the District incurred a cost of $9,261,340 ($25,000,000

4  less $1,846,649 litigation costs x 40% = $9,261,340).   And, this Court should consider this

5  $9,261,340 cost in determining the District's "ultimate net loss."

6          In general, costs to obtain a recovery are typically deducted from the gross recovery.[34]

7  For example, in Various Underwriters at Lloyd's v. Theil,[35] the insured's helicopter crashed.

8  The insured was able to sell the salvaged wreckage for $42,668.   However, in doing so, the

9  insured incurred expenses of $1,562 in retrieving, transporting and storing the salvage.   These

10  costs were then deducted from the actual salvage recovery resulting in a "net" salvage recovery

11  of $41,105.

12          In this case, TIG wants a $95,000,000 credit for the Lloyd's and Federated payments.

13  But TIG's argument fails to acknowledge that the District had to incur an expense in order to

14  obtain those recoveries.   Specifically, the District entered into an agreement with Lloyd's to

15  front the litigation costs.   The agreement required the District to return as a cost, forty percent

16  of any recovery.   As a result, when the District recovered $25,000,000 from Federated it had to

17  give Lloyd's 40% of that award.   Therefore, under TIG's agreement to indemnify the District

18  for its "ultimate net loss," TIG should only get a credit for the District's net recoveries of

19  $85,738,660.

20

21

22

23

---

24  [34] See Various Underwriters at Lloyd's v. Theil, 578 F. Supp. 394 (D.C. Colo. 1984); Cassel v. Newark Ins. Co.,
25  79 N.W.2d 101,105-06 (Wis. 1956); International Ore & Fertilizer Corp. v. SGS Control Services, Inc., 828 F.
Supp. 1098, 1109-1111 (S.D.N.Y. 1993).
[35] 578 F. Supp. 394 (D.C. Colo. 1984).

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

In view of the foregoing, TIG owes $39,658,565[36] ($125,497,225 - $70,000,000 recovery from DIC carriers - $25,000,000 settlement from Federated - $100,000 Federated deductible + $9,261,340 expense to effect a recovery = $39,658,565).

### IV. The District is Entitled to Prejudgment Interest

From the onset of the litigation, the District advised TIG that its damages exceeded $125,000,000. In April 2007, the Appraisal Panel confirmed the District's position and determined that the District's loss totaled $125,497,225. After subtracting the gross payments the District received from the DIC carriers and Federated, and Federated's deductible, TIG's owes $30,397,225. TIG has avoided paying this amount for several years. Accordingly, the District seeks prejudgment interest on the amount owed.

TIG concedes that Washington "favors prejudgment interest."[37] The rationale for awarding prejudgment interest is explained in Universal/Land Construction Co. v. City of Spokane[38] where the court stated:

> Prejudgment interest is favored in the law based on the premise that he who retains money he should pay to another should be charged interest on it.[39]

The above demonstrates Washington's public policy to penalize parties that wrongfully withhold money from others.

Washington awards prejudgment interest in either of the following two circumstances:[40]

---

[36] Again, this figure does **not** take into account the $1,670,349 in attorneys' fees that the District is seeking from TIG under Point I.

[37] See TIG's Motion for Summary Judgment and Alternative Motion for Partial Summary Judgment at p. 22 line 20 [Document No. 249].

[38] 49 Wash. App. 634, 745 P.2d 53 (1987).

[39] Id. at 641, 745 P.2d 53.

[40] TIG correctly cites to prevailing Washington law concerning prejudgment interest.

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

- The amount due is determinable by computation with reliance to a fixed standard contained in the contract without reference on opinion or discretion.[41]

**Or,**

- The amount claimed is "liquidated;"

A claim is liquidated where the evidence furnishes data that makes it possible to compute the amount of damage with exactness.[42]  "The fact that a claim is disputed does **not** make it unliquidated."[43]

Washington courts have held that actual invoices constitute sufficient evidence to render a claim "liquidated."[44]  For example, in <u>Weyerhaeuser Co. v. Commercial Union Ins. Co.</u>[45] the insurer disputed coverage and the amount of damage sustained in cleaning up environmental waste.  The jury returned a verdict in the insured's favor.  The insured then argued it was entitled to prejudgment interest.  To support its claim, the insured submitted actual invoices for the cleanup work performed.

The Washington Supreme Court affirmed the trial court's award of prejudgment interest and held that the "damage amount was established or could be ascertained with certainty based upon the facts before the court."[46]  Specifically, the court stated:

> Here, the parties disputed the amount of insurance coverage available and the amount of damage sustained.  Once liability was established, however, calculating the amount due required no discretion—it equaled the invoices for the cleanup work performed.  The questions before the jury were simply ones of liability and did not involve opinion or an exercise of discretion regarding the amount of the award, as would be the case with general damages.  Weyerhaeuser factually established its costs

---

[41] <u>Litho Color, Inc.</u>, 98 Wash. App. at 301, 991 P.2d 638.

[42] See <u>Egerer v. CSR West, LLC</u>, 116 Wash. App. 645, 67 P.3d 1128 (2003).

[43] <u>Universal/Land Construction Co.</u>, 49 Wash. App. at 641, 745 P.2d 53 (Emphasis added).

[44] See <u>Weyerhaeuser Co. v. Commercial Union Ins. Co.</u>, 142 Wash.2d 654, 15 P.3d 115 (2000).

[45] <u>Id</u>.

[46] <u>Id.</u> at 686, 15 P.3d 115.

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

through the presentation of invoices.   The date those invoices were paid established the proper time interest began to run.[47]

Similar to Weyerhaeuser, the District's claim is also liquidated because the amount TIG owes is supported by actual invoices and can be ascertained with exactness and without reliance on opinion or discretion.[48]   In determining how much prejudgment interest to award, the Weyerhaeuser court held that prejudgment interest runs from the date the invoices were paid.[49]

In addition, the court in Prier v. Refrigeration Engineering Co.,[50] held that the prejudgment interest ran from the date the repairs were completed.[51]   In Prier, the plaintiff contracted for an ice rink.   The refrigeration contractor breached the contract and was held responsible for the cost to reconstruct the ice rink.   The plaintiff argued that it was entitled to prejudgment interest from the date the repairs were completed and the business reopened. The Washington Supreme Court agreed and held that prejudgment interest should be calculated when the principal amount due, by way of debt or compensation, is "sufficiently certain."[52]

Based on Weyerhaeuser and Prier, this Court should award prejudgment interest on the amount TIG owes from the date of the invoices as documented by RGL's February 8, 2007 report.   And, because RGL's report identifies every invoice the District paid over the course of the four year restoration period, the parties can work backwards to identify the invoices and costs incurred in the last $30,397,225.   Thus, the District can demonstrate when the prejudgment interest begins to run for **each invoice**.

---

[47] Id.

[48] See portions of RGL's February 8, 2007 report attached hereto as Exhibit C to Hoffman Decl.

[49] See Weyerhaeuser Co., 142 Wash.2d at 686, 15 P.3d 115; Universal/Land Construction Co., 49 Wash. App. at 641, 745 P.2d 53.

[50] 74 Wash.2d 25, 442 P.2d 621 (Wash. 1968).

[51] Id. at 34, 442 P.2d 621.

[52] Id. at 34, 442 P.2d 621.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 17

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

This Court will recall that the District advised the Court that it intended to file a motion for prejudgment interest.  And, on May 29, 2007, the Court instructed the District to submit that motion by June 1, 2007.   The Court will appreciate that quantifying the prejudgment interest based on each invoice is a time consuming process.  Accordingly, the District was **not** able to complete this task in four days.

However, the District calculates the prejudgment interest is at least $1,823,833.  This number represents the prejudgment interest for six months from December 13, 2006 (the date the District produced RGL's final report to TIG[53]) to June 13, 2007 (the date of the hearing).[54] But the District maintains that this amount will increase when the Court looks at invoices for all expenses excess of $95,000,000 that were incurred **prior to** December 13, 2006.

TIG characterizes the District's claim as "a moving target" and maintains that the District is not entitled to prejudgment interest because it is unable to ascertain the amount owed.  However, TIG's argument lacks merit because the District only seeks prejudgment interest on the amounts that have been **incurred** (i.e., the invoices were paid)**.**  And, once the amounts have been incurred, the amounts owed are ascertainable and, therefore, "liquidated." Equity and fairness dictate that this Court should find in the District's favor and award prejudgment interest.

## V.    Conclusion

This Court has already determined that TIG wrongfully denied coverage for the District's loss.  As a result of TIG's breach the District:

- Had to cope with the double whammy of finding the financial resources to repair Swift No.2 and litigating a protracted and expensive coverage dispute for an unknown and indefinite period of time;

---

[53] RGL subsequently revised its December 13, 2006 report on February 8, 2007, but these revisions do not affect the prejudgment interest calculation.

[54] $30,397,225 x 12% divided by 12 = $303,972.25 interest per month x 6 months = $1,823,833.

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

- Entered into an agreement with Lloyd's whereby the District agreed to give Lloyd's 40% of any recovery from Federated and TIG;

- Incurred more than two million dollars in attorneys' fees and expenses in proving coverage; and

- Had to engage in vexatious, time-consuming and expensive litigation with TIG.

Washington case law and public policy dictate that the District should be made whole as a result of TIG's contract breach. Case law and public policy also support this Court's award of all damages required to put the District back in the financial position it would have been in had TIG not breached the insurance contract.

In view of the foregoing, the District requests that the Court make the following determinations:

- The District is entitled to recover all attorneys' fees and expenses.

- TIG is responsible for all other damages incurred as a result of TIG's contract breach. This includes the money the District will have to give to Lloyds from any TIG recovery.

- TIG's $95,000,000 "credit" for the recoveries from Lloyd's and Federated should consider the $9,261,340 cost to effect those recoveries. As a result, TIG owes $39,658,565 and **not** just $30,397,225 ($30,397,225 + $9,261,340 = $39,658,565).

- The District is entitled to prejudgment interest on the $30,397,225 (or $39,658,566) that TIG owes.

For the Court's convenience, the District summarizes the relief requested below:

| Category of Damage | Amount |
|---|---|
| Attorneys' fees and expenses for proving coverage (February 4, 2004 – July 2006) | $1,655,083[55] |

---

[55] $960,348 attorneys' fees + $64,253 attorneys' expenses + $629,881 expert and consultant fees = $1,655,083.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL] - 19

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505

| Attorneys' fees and expenses for proving coverage (August 2006 – to date) | TBD |
|---|---|
| Cost to collect insurance proceeds from TIG | $12,158,890 |
| Costs to effect the $95,000,000 recoveries | $9,261,340 |
| Prejudgment Interest prior to 12-13-2006 | TBD |
| Prejudgment Interest after 12-13-2006 | $1,823,833[56] |
| **PRESENT TOTAL** | **$24,899,146** |

WHEREFORE the District respectfully requests that this Court grant its Motion for Attorneys' Fees, Prejudgment Interest and Other Damages Caused As a Result of TIG's Breach of Contract.

DATED this 1st day of June 2007

Co-Counsel for Defendant PUD #1 of Cowlitz Co.

 s/  Jennifer Hoffman

BRUCKMANN & VICTORY, LLP
Arjang Victory (*Admitted Pro Hac Vice*)
Jennifer Hoffman (*Admitted Pro Hac Vice*)
420 Lexington Avenue, Suite 1621
New York, NY  10107
Telephone:  (212) 850) 8500
Facsimile:   (212) 850-8505

Co Counsel for Defendants Cowlitz Co. PUD #1

 s/  Michael E. Ricketts
WSBA #9387
E-mail mricketts@kingmanpeabody.com

KINGMAN, PEABODY
FITZHARRIS, & RINGER P.S.
505 Madison St. #300
Seattle, WA 98104
Tel. (206) 622-1264
Fax (206) 292-2961

---

[56] The District maintains that this amount will increase when the Court looks at invoices for all expenses excess of $95,000,000 that were incurred prior to December 13, 2006.

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL]  - 20

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE  1621
NEW YORK, NEW YORK  10170
TEL:  212. 850.8500 / FAX: 212.850.8505

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I certify under penalty of perjury that on this date I served the foregoing document in the manner indicated on the persons identified below:

**DEFENDANT PUD'S MOTION TO FOR ATTORNEYS' FEES, INTEREST AND OTHER DAMAGES**

| | |
|---|---|
| Ronald Clark, Esq. | Maria Sotirhos, Esq. |
| Bullivant Houser Bailey | Bullivant Houser Bailey |
| 888 S.W. Fifth Avenue, Suite 300 | 1601 Fifth Avenue, Suite 2300 |
| Portland, OR 97204-2089 | Seattle, WA 98101-3622 |
| Seattle, WA 98104 | *Attorney for Plaintiffs Federated & TIG* |
| *Attorney for Plaintiffs Federated & TIG* | ( ) Mail |
| ( ) Mail | ( ) Fax: 386-5130 |
| ( ) Fax: (503) 295-0915 | ( ) Hand Delivery |
| ( ) Federal Express | (X) CM/ECF system notice of electronic |
| (X) CM/ECF system notice of electronic | filing |
| filing | |

Signed at Seattle, Washington, this 1st day of June, 2007.


      s/  Michael E. Ricketts

DEFENDANT PUD'S MOTION FOR
ATTTORNEYS FEES, INTEREST AND OTHER
DAMAGES [CV04-5052RBL] - 21

BRUCKMANN & VICTORY, LLP
ATTORNEYS AT LAW
420 LEXINGTON AVENUE, SUITE 1621
NEW YORK, NEW YORK 10170
TEL: 212. 850.8500 / FAX: 212.850.8505